IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-90-D

MELISA JONES & TIMOTHY )
WILLIAMS, Co-Administrators of )
the Estate of Timothy Derris Williams, )
)
      Plaintiffs, )
)
v. ) **ORDER**
)
SHERIFF DONNIE HARRISON, et al., )
)
      Defendants. )

On May 9, 2012, Melisa Jones and Timothy Williams (collectively "plaintiffs"), co-administrators of the estate of their son Timothy Derris Williams, filed this action against Wake County, Wake County Sheriff Donnie Harrison, and the Ohio Casualty Insurance Company as surety for the Wake County Sheriff [D.E. 1]. The action arises out of the attempted suicide, and ultimate death, of Timothy Derris Williams while he was a pre-trial detainee at the Wake County Detention Center. On October 5, 2012, Wake County filed a motion to dismiss all claims against Wake County pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 11] and a supporting memorandum [D.E. 12].[1] Plaintiffs did not respond. As explained below, the court grants in part and denies in part Wake County's motion to dismiss.

I.

On April 20, 2011, officers from the Raleigh Police Department arrested Timothy Derris Williams ("Williams") and charged him with several crimes. Compl. [D.E. 1] ¶¶ 18–20. Williams

---

[1] Sheriff Harrison and Ohio Casualty Insurance Company filed an answer to the complaint [D.E. 10].

failed to post bond and was detained pending trial at the Wake County Detention Center ("WCDC"). Id. ¶¶ 21–22. While housed at the WCDC, Williams "verbally and physically expressed suicidal behavior." Id. ¶ 26. Between April 20 and May 3, 2011, "Williams was twice removed from the general population . . . and placed on suicide watch." Id. ¶ 30.

On May 3, 2011, Williams returned to general detainee housing at the WCDC. Id. ¶ 31. That day, Williams hanged himself in his cell with a WCDC-issued bed sheet tied to a ceiling vent. See id. ¶¶ 37–39. WCDC employees discovered Williams in the cell and contacted Wake County EMS. See id. ¶¶ 39–41. Wake County EMS transported Williams to WakeMed hospital for treatment. Id. ¶ 42. Williams died at WakeMed on May 10, 2011. Id. ¶ 46.

Plaintiffs allege eight claims, some under federal law and some under North Carolina law. As for the federal claims, plaintiffs assert claims under 42 U.S.C. § 1983 against Wake County and Sheriff Harrison for violating Williams's rights under the Eighth and Fourteenth Amendments to the United States Constitution. See Compl. ¶¶ 62–74. As for the state law claims, plaintiffs assert claims against both Wake County and Sheriff Harrison for negligence, id. ¶¶ 75–80, wrongful death, id. ¶¶ 104–05, and under article I, sections 1, 19, and 27 of the North Carolina Constitution. Id. ¶¶ 99–103. Plaintiffs assert claims solely against Sheriff Harrison for negligent failure to train, id. ¶¶ 81–85, and causing injury to a prisoner in violation of N.C. Gen. Stat. § 162-55. Id. ¶¶ 86–92. Plaintiffs also bring a claim against the Ohio Casualty Insurance Company as the surety for Sheriff Harrison. Id. ¶¶ 93–98.

In analyzing a motion to dismiss under Rule 12(b)(6), a court must determine whether the complaint is legally and factually sufficient to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012);

Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see Iqbal, 556 U.S. at 678–79. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

As for the section 1983 claims in counts one and two, "[a] county may only be held liable for acts for which the county has final policymaking authority." Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 739 (E.D.N.C. 2008); see Little v. Smith, 114 F. Supp. 2d 437, 446 (W.D.N.C. 2000). State law governs whether a county has final policymaking authority on a specific topic. See, e.g., City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988); Parker, 583 F. Supp. 2d at 739.

"Under North Carolina law, sheriffs have substantial independence from county government." Parker, 583 F. Supp. 2d at 739. Under the North Carolina Constitution, voters directly elect the sheriff. See N.C. Const. art. VII, § 2. County governments do not hire sheriffs. See, e.g., Parker, 583 F. Supp. 2d at 739; Little, 114 F. Supp. 2d at 446. By statute, "the sheriff, not the county encompassing his jurisdiction, has final policymaking authority over hiring, supervising, and discharging personnel in the sheriff's office." Parker, 583 F. Supp. 2d at 739; see N.C. Gen. Stat. § 153A-103(1); Clark v. Burke Cnty., 117 N.C. App. 85, 89, 450 S.E.2d 747, 749 (1994). North Carolina law also vests the sheriff with the "statutory responsibility for the care and custody of the inmates at the county jail." Vaught v. Ingram, No. 5:10-CT-3009-FL, 2011 WL 761482, at *4 (E.D.N.C. Feb. 24, 2011) (unpublished); see N.C. Gen. Stat. § 162-22; Landry v. North Carolina, No. 3:10-cv-585-RJC-DCK, 2011 WL 3682788, at *2 (W.D.N.C. Aug. 23, 2011) (unpublished). Thus, under North Carolina law, any allegations relating to personnel, training, or other law

3

enforcement policies at the county jail fall within the sheriff's policymaking authority and are not attributable to the county. See, e.g., Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446.

Plaintiffs' allegations in count two involve the selection, retention, and supervision of WCDC employees, and the actions of those employees. See Compl. ¶¶ 68, 70. The sheriff bears final policymaking authority for these matters. Hence, the court dismisses count two against Wake County.

The one topic pertaining to the county jail over which a county may exercise final policymaking authority deals with the medical care of jail inmates. By statute, each county that operates a jail "shall develop a plan for providing medical care for prisoners in the facility." N.C. Gen. Stat. § 153A-225(a). The county develops the medical care plan in conjunction with the sheriff and other local authorities, and the plan must be approved by the county's health director and governing board. See id. Moreover, in the event an inmate has a medical emergency, the county that operates the jail "shall pay the cost of emergency medical services." N.C. Gen. Stat. § 153A-224(b). Wake County argues that these statutory obligations terminate with respect to the county once a jail is constructed and its operation turned over to the sheriff. See Def.'s Mem. 9–10. The North Carolina Court of Appeals, however, has construed the statutes more expansively to "'require that a county provide emergency medical services to prisoners incarcerated in the county's jail and to pay for such services.'" Cnty. of Guilford v. Nat'l Union Fire Ins. Co., 108 N.C. App. 1, 4, 422 S.E.2d 360, 362–63 (1992) (quoting Univ. of N.C. v. Hill, 96 N.C. App. 673, 675, 386 S.E.2d 755, 757, aff'd, 327 N.C. 465, 396 S.E.2d 323 (1990)) (emphasis omitted).

Here, plaintiffs' complaint cites Wake County's duty under N.C. Gen. Stat. § 153A-225 to develop a medical care plan for inmates. See Compl. ¶ 10. Moreover, count one alleges, in part, that

4

Wake County's plan was inadequate. See id. ¶ 64. These allegations in count one against Wake County are sufficient to survive the motion to dismiss. See Vaught, 2011 WL 761482, at *3–4; Ellis v. Bunn, No. 7:08-CV-71-BR, 2008 WL 3876165, at *2–3 (E.D.N.C. Aug. 18, 2008) (unpublished). Thus, Wake County's motion to dismiss count one is denied with respect to plaintiffs' claim about Wake County's medical care plan for inmates.

As for plaintiffs' state law claims, count three alleges that Wake County negligently breached common law, statutory, and regulatory duties owed to Williams. See Compl. ¶¶ 76–77. As discussed, Wake County's duties with respect to the medical operation of the WCDC are limited to those imposed by statute.[2] In count three, plaintiffs rely on N.C. Gen. Stat. § 153A-224 as creating a statutory duty incumbent upon Wake County, Compl. ¶ 77, which Wake County breached by "failing to provide [Williams] with adequate medical care and supervision." Id. ¶ 78. However, a county's duty under section 153A-224 is limited to paying "the cost of emergency medical services." N.C. Gen. Stat. § 153A-224; see Ellis, 2008 WL 3876165 at *3 (construing a county's duty under section 153A-224 to "not extend to actually obtaining medical care"). Plaintiffs do not allege that Wake County failed to pay for the emergency medical services that Williams received. Thus, plaintiffs failed to state a claim against Wake County and the court dismisses count three as to Wake County.

Plaintiffs claims in counts four (negligent failure to train), five (causing injury to a prisoner), and six (action against a surety) are based on allegations solely against Sheriff Harrison or Ohio Casualty Insurance Company. Thus, to the extent plaintiffs assert those claims against Wake

---

[2] Although plaintiffs cite 10A N.C. Admin. Code 14J.0601, that regulation prescribes the conduct of jailors, over whom the sheriff exercises final policymaking authority. Thus, the regulation cannot serve as a basis for Wake County's liability. See, e.g., Parker, 583 F. Supp. 2d at 739–40; Little, 114 F. Supp. 2d at 446.

5

County, the court dismisses them. Plaintiffs pleaded their claim in count seven under the North Carolina Constitution in the alternative to counts three and four. See Compl. ¶ 100. The claim in count seven against Wake County, however, also fails because plaintiffs have an adequate state remedy. See, e.g., Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); Wilcox v. City of Asheville, 730 S.E.2d 226, 236 (N.C. Ct. App. 2012). In count eight, plaintiffs assert a wrongful death claim under N.C. Gen. Stat. § 28A-18-2. This claim survives dismissal against Wake County only to the extent that it relates to Wake County's medical care plan for inmates.

Finally, Wake County seeks to dismiss plaintiffs' claim for punitive or exemplary damages. See Def.'s Mem. 12–13. As for the remaining federal claim against Wake County under section 1983, "a municipality is immune from punitive damages under [section] 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). As for the remaining state law claim against Wake County, North Carolina law does not authorize the recovery of punitive damages from a county. See Crain v. Butler, 419 F. Supp. 2d 785, 793 (E.D.N.C. 2005); Long v. City of Charlotte, 306 N.C. 187, 206–08, 293 S.E.2d 101, 113–15 (1982); Ripellino v. N.C. Sch. Bds. Ass'n, 158 N.C. App. 423, 431, 581 S.E.2d 88, 94 (2003); Houpe v. City of Statesville, 128 N.C. App. 334, 351, 497 S.E.2d 82, 93 (1998); Baucom's Nursery Co. v. Mecklenburg Cnty., 89 N.C. App. 542, 545, 366 S.E.2d 558, 560 (1988). Thus, the court dismisses plaintiffs' claim for punitive damages against Wake County.

II.

In sum, the court GRANTS IN PART and DENIES IN PART Wake County's motion to dismiss [D.E. 11]. Counts one and eight survive against Wake County to the extent that the claims relate to Wake County's medical care plan for inmates. All other counts, as well as plaintiffs' claim for exemplary or punitive damages, are dismissed as to Wake County.

6

SO ORDERED. This 9 day of April 2013.

                                            JAMES C. DEVER III
                                            Chief United States District Judge