IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:12-CV-90-D

| | |
|---|---|
| MELISA JONES & TIMOTHY WILLIAMS, Co-Administrators of the Estate of Timothy Derris Williams, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) **ORDER** ) |
| SHERIFF DONNIE HARRISON, et al., | ) ) |
| Defendants. | ) |

On May 9, 2012, Melisa Jones and Timothy Williams (collectively "plaintiffs"), co-administrators of the estate of their son Timothy Derris Williams ("Williams"), filed this action against Wake County, Wake County Sheriff Donnie Harrison, and the Ohio Casualty Insurance Company as surety for the Wake County Sheriff [D.E. 1]. The action arises out of Williams's suicide while he was a pre-trial detainee at the Wake County Detention Center. On April 9, 2013, the court granted in part defendant Wake County's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and dismissed all claims against Wake County other than counts one and eight of plaintiffs' complaint, as well as plaintiffs' claim against Wake County for exemplary or punitive damages [D.E. 19]. The court allowed counts one and eight to go forward against Wake County only to the extent they related to Wake County's medical care plan for inmates. Id.

On October 15, 2013, defendants Harrison and the Ohio Casualty Insurance Company (collectively, "the sheriff defendants") filed the affidavit of Dr. Obinnaya C. Umesi, the Medical Director for the Wake County Sheriff's Office [D.E. 26-1] ("1st Umesi Aff."). On December 20, 2013, all defendants moved for summary judgment [D.E. 31, 33]. On December 31, 2013, defendant

Wake County supplemented its motion for summary judgment [D.E. 36]. On January 3, 2014, the sheriff defendants supplemented their motion for summary judgment [D.E. 37]. On February 2, 2014, plaintiffs responded in opposition to the motions [D.E. 39]. On February 10, 2014, the sheriff defendants filed a reply [D.E. 40], together with the affidavit of Heidi Steinbeck [D.E. 41] and several exhibits. As explained below, the court grants defendants' motions for summary judgment.

I.

On April 20, 2011, officers from the Raleigh Police Department arrested Williams and charged him with several crimes. Compl. [D.E. 1] ¶¶ 18–20. Williams failed to post bond and was detained pending trial at the Wake County Detention Center ("WCDC"). Id. ¶¶ 21–22. While housed at the WCDC, Williams "verbally and physically expressed suicidal behavior." Id. ¶ 26. Between April 29 and May 3, 2011, "Williams was twice removed from the general population . . . and placed on suicide watch." Id. ¶ 30; see 1st Umesi Aff. [D.E. 26-1] ¶ 4.a., d.

On April 29, 2011, after jail staff placed Williams on suicide watch, a psychiatrist examined Williams, concluded Williams was not a harm to himself, and removed Williams from suicide watch. 1st Umesi Aff. ¶ 4.c. On April 30, 2011, after Williams told a nurse he wanted to hurt himself, he was returned to suicide watch. Id. ¶ 4.d. On May 2, 2011, another psychiatrist examined Williams and concluded that Williams was not suicidal and could return to general population. Id. ¶ 4.e., f.

On May 2, 2011, Williams returned to general detainee housing at the WCDC. Compl. ¶ 31. The following day, Williams hanged himself in his cell with a WCDC-issued bed sheet tied to a ceiling vent. See id. ¶¶ 37–39. WCDC policy requires detention officers "to make supervision rounds and directly observe each inmate in person at least twice per hour on an irregular basis." 1st Umesi Aff. ¶ 4.j. (citing 10(a) N.C.A.C. 14J.0601(a)). On the date in question, WCDC detention

2

officers performed these checks as required, and observed Williams's housing unit between 10:53 a.m. and 10:54 a.m. and again from 11:21 a.m. through 11:24 a.m. Id. ¶¶ 4.m.–n.; Sheriff Defts.' Mot. Summ. J., Exs. [D.E. 32-1] 10–13 (guard tour history report). At 11:25 a.m., WCDC detention officers discovered Williams hanging from a vent in his cell, cut him down, performed CPR, and contacted Wake County EMS. 1st Umesi Aff. ¶ 4.o.; Compl. ¶¶ 39–41; Sheriff Defts.' Mot. Summ. J., Exs. [D.E. 32-1] 8 (witness statement). Wake County EMS transported Williams to WakeMed hospital for treatment. Compl. ¶ 42. On May 10, 2011, Williams died at WakeMed. Id. ¶ 46.

Pursuant to N.C. Gen. Stat. 153A-221, the Secretary of the Department of Health and Human Services must "develop and publish minimum standards for the operation of local confinement facilities," including standards for the "supervision of prisoners" and "[m]edical care for prisoners, including mental health, mental retardation, and substance abuse services." The Secretary has promulgated minimum standards at 10A N.C. Admin. Code 14J.1001, and the WCDC's medical plan complies with these standards. See 2nd Umesi Aff. [D.E. 33-2] ¶¶ 4–7.

On June 4, 2013, Wake County served requests for admissions on counsel for plaintiffs. Wake Co.'s Mot. Summ. J., Ex. 3 [D.E. 33-3]. The requests included requests asking plaintiffs to admit that they "ha[ve] no evidence or factual basis to support the allegation in plaintiffs' complaint that the medical plan was 'inadequate'" and that plaintiffs "have no evidence or factual basis to support a conclusion that any part of or omission from the medical plan of the Wake County Jail would have prevented the incident or [Williams]'s death." Id. On December 20, 2013, the same day Wake County filed its motion for summary judgment, plaintiffs served Wake County with their untimely responses to the requests for admission, which denied the two cited requests. Supp. Wake Co.'s Mot. Summ. J., Ex. 1 [D.E. 36-1] 14.

3

Plaintiffs allege eight claims, some under federal law and some under North Carolina law. As for the federal claims, plaintiffs assert claims under 42 U.S.C. § 1983 against Wake County and Sheriff Harrison for violating Williams's rights under the Eighth and Fourteenth Amendments to the United States Constitution. See Compl. ¶¶ 62–74. As for the state law claims, plaintiffs assert claims against both Wake County and Sheriff Harrison for negligence, id. ¶¶ 75–80, wrongful death, id. ¶¶ 104–05, and under article I, sections 1, 19, and 27 of the North Carolina Constitution. Id. ¶¶ 99–103. Plaintiffs assert claims solely against Sheriff Harrison for negligent failure to train, id. ¶¶ 81–85, and for causing injury to a prisoner in violation of N.C. Gen. Stat. § 162-55. Id. ¶¶ 86–92. Plaintiffs also bring a claim against the Ohio Casualty Insurance Company as the surety for Sheriff Harrison. Id. ¶¶ 93–98.

II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). In evaluating a motion for summary judgment, the court views the evidence and the inferences drawn from that evidence in the light most favorable to the nonmoving party. See Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam); Scott v. Harris, 550 U.S. 372, 378 (2007).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 325. That is, the moving party must show the existence of a "dispute[] over [a] fact[] that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and

4

quotation omitted). The nonmoving party must do more than present a "scintilla of evidence" in its favor. Anderson, 477 U.S. at 252. Rather, the nonmoving party must present "sufficient evidence" such that reasonable jurors could find for it. Id. at 249. Accordingly, a court may grant summary judgment if the nonmoving party's evidence is "merely colorable" or "not significantly probative." Id. at 249–50.

Count one asserts a violation of 42 U.S.C. § 1983 based on purported deficiencies in the medical-care plan for suicidal inmates at the WCDC. Compl. ¶¶ 62–66; see [D.E. 19] 3–5. Wake County responds that plaintiffs have "produced no evidence through discovery or otherwise that the medical plan put into place by the county was inadequate in any way or failed to address the [regulatory] requirements." Mem. Supp. Wake Co.'s Mot. Summ. J. 6. Wake County also relies on plaintiffs' failure to timely respond to their requests for admissions. Id.

Federal Rule of Civil Procedure 36(a)(3) provides, in relevant part, that unless the court sets a different deadline, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." "A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Moreover, "[a] party's failure to respond to a request for admissions under Federal Rule of Civil Procedure 36 may result in a material fact being deemed admitted and subject the party to an adverse grant of summary judgment." United States v. Renfrow, 612 F. Supp. 2d 677, 682 (E.D.N.C. 2009) (citations omitted); see Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 173 (4th Cir. 2005) (per curiam) (unpublished) ("Rule 36 admissions are *conclusive* for purposes of the litigation and are sufficient to support summary judgment." (emphasis in original) (quotation omitted)).

5

Plaintiffs never sought or received an extension of time from this court to answer defendants' requests for admission, and plaintiffs do not address the timeliness issue now. Rather, in opposing Wake County's motion for summary judgment, plaintiffs focus on whether a psychiatric report by Dr. Meltzer is "fictional" and whether "Williams was in fact on the first floor (suicidal floor) of the detention facility at the time of his demise." Pls.' Resp. Opp'n Mots. Summ. J. 3–4.

The effect of plaintiffs' failure to respond timely to the requests for admission entitles Wake County to summary judgment on count one. See, e.g., Adventis, Inc., 124 F. App'x at 173; Renfrow, 612 F. Supp. 2d at 688. Plaintiffs' bizarre references to Dr. Meltzer and to Williams's location when he hung himself and later died do not alter this conclusion. Thus, the court grants summary judgment to Wake County on count one.

As for the sheriff defendants, to avoid summary judgment on count one, plaintiffs must show a genuine issue of material concerning whether "(1) a constitutional injury occurred as a result of the employee's conduct, (2) the supervisor had a policy or custom that amounted to a deliberate indifference to the deprivation of constitutional rights, and (3) this policy or custom caused the constitutional injury complained of." Chennault v. Mitchell, 923 F. Supp. 2d 765, 786 (E.D. Va. 2013); see City of Canton v. Harris, 489 U.S. 378, 388–92 (1989); Smith v. Atkins, 777 F. Supp. 2d 955, 966–67 (E.D.N.C. 2011). "[T]he inadequacy of police training may serve as a basis for [section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Harris, 489 U.S. at 388; see Connick v. Thompson, 131 S. Ct. 1350, 1359–60 (2011); Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 408–10 (1997); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000); Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999). Thus, to establish a claim under section 1983 for failure to train law enforcement officers, a plaintiff must show that "officers are not adequately trained 'in relation to

6

the tasks that the particular officers must perform' and this deficiency is 'closely related to the ultimate injury.'" Lytle v. Doyle, 326 F.3d 463, 473 (4th Cir. 2003) (quoting Harris, 489 U.S. at 390–91). Moreover, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train . . . . Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Thompson, 131 S. Ct. at 1360 (quotation omitted); see Doe, 225 F.3d at 456; Smith, 777 F. Supp. 2d at 967. Only in the rarest of circumstances may "the unconstitutional consequences of failing to train . . . be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." Thompson, 131 S. Ct. at 1362; see, e.g., Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (plurality opinion).

Plaintiffs have failed to make the requisite showing. "Here, plaintiffs have not identified any specific training deficiencies, and there is no pattern of unconstitutional conduct. . . . Rather, this case involves one tragic suicide. Likewise, no rational jury could find that a violation of the Eighth [or Fourteenth] Amendment is a highly predictable consequence of the [WCDC]'s current policies and training concerning suicidal inmates." Smith, 777 F. Supp. 2d at 967–68 (citations omitted).[1] Even if "Williams was in fact on the first floor (suicidal floor) of the detention facility at the time of his demise" as plaintiffs contend, Resp. Opp'n Mots. Summ. J. 3, "the mere failure to comply

---

[1] Although plaintiffs identify the Eighth Amendment as the source of their claim, courts evaluate confinement conditions of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). As a practical matter, the analysis under the Due Process Clause and the analysis under the Eighth Amendment is materially indistinguishable. See, e.g., Pittman, 746 F.3d at 775; Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), overruled on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 991–92 (4th Cir. 1992).

7

with this state regulation and jail policy is not a constitutional violation." Smith, 777 F. Supp. 2d at 965 (collecting cases). Moreover, plaintiffs have failed to raise a genuine issue of material fact that any failure to conduct a specific number of observation rounds contributed to Williams's suicide, where officers conducted one round between 11:21 a.m. and 11:24 a.m. and discovered Williams at 11:25 a.m. Id. Thus, the court grants summary judgment to the sheriff defendants on count one.

Count two alleges that Sheriff Harrison was deliberately indifferent to Williams's medical needs in violation of the Fourteenth Amendment. Compl. ¶¶ 67–74. To succeed on this claim, plaintiffs must

> prove two elements; (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety; and (2) defendants were deliberately indifferent to that risk. See, e.g., Iko v. Shreve, 535 F.3d 225, 241–43 (4th Cir. 2008); Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006). In a jail suicide case, the first element is satisfied because "suicide is a serious harm." Collins, 462 F.3d at 760. The second element—deliberate indifference—requires a dual showing: "that the defendant (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." Id. at 761; Simmons v. Navajo County, 609 F.3d 1011, 1018 (9th Cir. 2010); Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010); Short v. Smoot, 436 F.3d 422, 427 (4th Cir. 2006); Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1268–69 (11th Cir. 2005); Gray v. City of Detroit, 399 F.3d 612, 616 (6th Cir. 2005); Woloszyn v. County of Lawrence, 396 F.3d 314, 320–21 (3d Cir. 2005).

Smith, 777 F. Supp. 2d at 964. In analyzing this claim, "the court must focus on whether defendants actually knew and disregarded an objectively serious risk that [Williams] would commit suicide." Id. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." Farmer, 511 U.S. at 837; Iko, 535 F.3d at 241–42; Short, 436 F.3d at 427. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); see Farmer, 511 U.S. at 837. A

8

plaintiff must demonstrate that the care provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle v. Gamble, 429 U.S. 97, 105–06 (1976); Grayson v. Peed, 195 F.3d 692, 695–96 (4th Cir. 1999).

Plaintiffs have failed to raise a genuine issue of material fact concerning whether Sheriff Harrison was deliberately indifferent to Williams's medical needs. Detention officers placed Williams on suicide watch twice in two days, and on each occasion, a psychiatrist examined Williams and concluded that he did not present a suicide risk. The detention officers were entitled to rely on the opinion of these psychiatrists that Williams did not require placement on suicide watch. Miltier, 896 F.2d at 854; see, e.g., duBois v. Payne Cnty. Bd. of Cnty. Comm'rs, 543 F. App'x 841, 849 (10th Cir. 2013) (unpublished). Moreover, nothing in the record indicates that Sheriff Harrison "knew that [Williams] was suicidal or even that he faced mental health issues." Pittman, 746 F.3d at 779; see duBois, 543 F. App'x at 848; Smith, 777 F. Supp. 2d at 964. Plaintiffs argue that "[a] reasonable fact finder could come to the conclusion that Dr. Meltzer was an agent of the Defendant Sheriff Donnie Harrison," which would render Sheriff Harrison liable for any deliberate indifference on the part of Dr. Meltzer. Resp. Opp'n Mots. Summ. J. 4. As a matter of law, however, plaintiffs' respondeat-superior argument concerning Sheriff Harrison fails. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Thus, the court grants summary judgment to defendants on count two.

As for plaintiffs' state law claims, counts three and four allege that Sheriff Harrison was negligent in "failing to provide [Williams] with adequate medical care and supervision" and in failing to train detention officers "to comply with their common law and statutory duties to observe inmates such as . . . Williams." See Compl. ¶¶ 76–85. Under North Carolina's doctrine of public official immunity, "[t]he general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." Slade v. Vernon, 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993); see Russ v. Causey, 468 F. App'x 267, 272 (4th Cir. 2012) (per curiam) (unpublished). Where, as here, "a defendant performs discretionary acts as part of his or her official or governmental duties, to sustain a suit for personal or individual liability, a plaintiff must allege and prove that the defendant's acts were malicious or corrupt." Russ, 468 F. App'x at 273 (quoting Schlossberg v. Goins, 141 N.C. App. 436, 446, 540 S.E.2d 49, 56 (2000)). Plaintiffs have failed to meet this burden. See, e.g., Layman v. Alexander, 294 F. Supp. 2d 784, 796 (W.D.N.C. 2003); Baker v. Smith, 737 S.E.2d 144, 152 (N.C. Ct. App. 2012), cert. denied, 748 S.E.2d 552 (N.C. 2013). Thus, the court grants summary judgment to defendants on counts three and four.

Plaintiffs' claims in counts five (causing injury to a prisoner pursuant to N.C. Gen. Stat. § 162-55), six (action against a surety), and eight (wrongful death) likewise fail. See, e.g., Elliott v. Rollins, No. 5:11-CV-693-FL, 2013 WL 5460193, at *16 (E.D.N.C. Sept. 30, 2013) (unpublished); Letchworth v. Gay, 874 F. Supp. 107, 109–10 (E.D.N.C. 1995); Stafford v. Barker, 129 N.C. App. 576, 585, 502 S.E.2d 1, 6 (1998). Thus, the court grants summary judgment to defendants on counts five, six, and eight.

10

Count seven alleges that defendants violated the North Carolina Constitution. Count seven fails, however, because plaintiffs have an adequate state remedy. See, e.g., Copper ex rel. Copper v. Denlinger, 363 N.C. 784, 788, 688 S.E.2d 426, 428–29 (2010); Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992); see Iglesias v. Wolford, 539 F. Supp. 2d 831, 838 (E.D.N.C. 2008). Thus, the court dismisses count seven.

III.

In sum, the court GRANTS defendants' motions for summary judgment [D.E. 31, 33], and DISMISSES the action. The clerk shall close the case.

SO ORDERED. This 21 day of July 2014.

JAMES C. DEVER III
Chief United States District Judge

11